**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CARMICHAEL KHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-0958 |
| | § | |
| AMERICAN INTERNATIONAL GROUP, | § | |
| INC. PERSONAL ACCIDENT INSURANCE | § | |
| PROGRAM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This ERISA suit arises out of the denial of $200,000 in accidental death and dismemberment

benefits claimed by the plaintiff, Carmichael Khan, after his wife, Rose Upshaw, died in a car

accident.   Khan was insured under a policy provided by his former employer, AIG Enterprise

Services ("AES").   During his employment with AES, Khan was a voluntary participant in, and

Upshaw was a covered dependent under, the American International Group, Inc. Personal Accident

Insurance Program (the "Plan"), which was issued and administered by National Union First

Insurance Company ("NUFIC").   Khan stopped working for AES on April 8, 2006. His wife died

on April 22, 2006.   NUFIC denied Khan's benefits claim on the ground that he had not timely

converted from coverage under the Plan to an individual policy after his employment with AES

ended.   Khan sues AES, NUFIC, and the Plan, seeking the unpaid benefits under 29 U.S.C. §

1132(a)(1)(B).  He also seeks  equitable relief under 29 U.S.C. § 1132(a)(3)(B) based on a claim of

breach of fiduciary duty and under federal common law based on a claim of ERISA-estoppel.

The defendants have moved for summary judgment, asserting that, as a matter of law, the

benefits denial did not violate ERISA. (Docket Entry No. 12).  Khan moved for additional discovery

and a continuance under Federal Rule of Civil Procedure 56(f), arguing that NUFIC failed to produce documents necessary for a full and fair review of the claim denial.  (Docket Entry No. 13).  The defendants responded to this motion.  (Docket Entry No. 16).  Khan also responded to the defendants' summary judgment motion and cross-moved for summary judgment, (Docket Entry No. 14), and the defendants replied, (Docket Entry No. 18).

Based on the pleadings; the motions, responses, and reply; the administrative record; and the applicable law, this court denies the cross-motions for summary judgment on the ERISA claim and remands this case to the Plan Administrator, NUFIC.  The remand is based on the absence of evidence in the record showing that the Plan Administrator considered the conflicting statements in the Summary Plan Description as to when coverage ceases after a participating employee ends his employment.  This court also grants the defendants' motion for summary judgment and denies Khan's cross-motion for summary judgment as to the claims for breach of fiduciary duty and estoppel.  Khan's request for discovery and a continuance is denied as moot.

The court remands Khan's claim to the Plan Administrator, with the instruction that the claim be determined within 120 days.  This case will be administratively closed pending the claim determination.  It may be reinstated by a motion made by either party within 14 days after the determination is issued.

The reasons for these rulings are explained below.

I.      **Background**

        A.      **The Group Accident Insurance Policy**

Group Accident Insurance Policy PAI 9028664 (the "Policy"), (Admin. Rec. 232–36), defined an "Insured" as:

a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Master Application; (2) who has enrolled for coverage under this Policy, if required; (3) for whom premium has been paid; and (4) while covered under this Policy.  However, an Insured does not include any person covered under this Policy solely as an Insured dependent as defined in the Family Coverage Rider.

(Admin. Rec. 239).

The Policy stated that an Insured's coverage ends the earliest of:

(1) the date this Policy is terminated [by AES]; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests in writing, that his or her coverage be terminated; or (4) the date the Insured ceases to be a[n Eligible Person] . . . .

(*Id.*).  "Eligible Persons" under the Policy included AES employees and their spouses and children.

(Admin. Rec. 232).

The Policy defined an "Insured Dependent" as a spouse or child:  "(1) whom the Insured has elected to cover under the Policy; (2) for whom premium has been paid; and (3) while covered under the Policy."  (Admin. Rec. 254).  Under the Policy, an Insured Dependent's coverage ends the earliest of:

(1) the date the Insured's coverage under the Policy ends; (2) the premium due date if premiums for the Insured Dependent are not paid when due; (3) the date the Insured requests in writing, that coverage for the Insured Dependent be terminated; or (4) the date the Insured Dependent ceases to be a[n Eligible Person] . . . .

(Admin. Rec. 253).

A "Conversion Privilege Rider" in the Policy stated that "[if] an Insured Person's coverage ends . . . because he or she is no longer a member of any eligible class of persons . . . coverage may be converted to an individual accidental death and dismemberment policy (herein called an Individual Policy)."  (Admin. Rec. 250).  The Rider required the Insured to submit "a written

3

application and payment of the required premium within 31 days after coverage ends under the Policy." (*Id.*).  Under the Rider, coverage under an Individual Policy takes effect on the later of: "(1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured Person's coverage under the Policy ends." (*Id.*).  No coverage is provided during any gap between when the Insured Person's coverage terminates and the conversion application is complete.  "In the event that the application and required premium are not received prior to termination of coverage under the Policy, coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective." (*Id.*).

### B.     The Summary Plan Description

NUFIC, the Plan Administrator, provided a Summary Plan Description ("SPD") of the Policy for AES employees.  Consistent with the Policy, one part of the SPD stated that an Insured Person's coverage ends on the earlier of:

> (1) the date the Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) *the date you cease to be an eligible employee of American International Group, Inc.*; (4) the date you request, in writing, that your coverage be terminated.

(Admin. Rec. 273) (emphasis added).  The SPD also stated that an Insured Dependent's coverage ends on the earlier of:

> (1) the date [the Insured Person's] coverage ends; (2) the premium due date if premiums for that covered dependent are not paid when due; (3) the date you request, in writing, that coverage for that covered dependent be terminated; or (4) the date that the covered dependent is no longer eligible for coverage as a dependent.

(*Id.*).

Another part of the SPD gave an inconsistent statement about when an Insured Person's coverage ends.  This statement provided that coverage ends on the earlier of:

4

(1) the date the Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) *the last day of the month in which the Insured ceases to be eligible for coverage under the Policy.*

(Admin. Rec. 277) (emphasis added).

Under the first of these SPD provisions, Khan's status as an Insured Person and his wife's coverage as an Insured Dependent ended on the date Khan's employment with AES ended.   Under the second of these provisions, coverage under the Plan ended on the last day of April 2006, the month in which Khan's employment ended.

The SPD described a "Conversion Privilege" that is worded the same way as the "Conversion Privilege Rider" in the Policy.   (Admin. Rec. 281).   Under the first of the SPD provisions, Khan and his wife had no coverage after his employment ended.   Under the second, Khan and his wife were covered until the end of the month his employment ended, which included the date of his wife's accident.

The SPD also stated that "[i]n the case of any conflict between the descriptions contained in the SPD and the Master Contract, the Master Contract will always govern."  (Admin. Rec. 292). Under the Master Contract, coverage ended on the date Khan's employment ended.

In moving for summary judgment, Khan contended – for the first time – that he never received a copy of the SPD.  (Docket Entry No. 14, Khan Aff. ¶ 5).  The defendants counter that because Khan failed to raise this issue during the administrative-review process or in his complaint in the present suit, Khan's summary judgment affidavit should be disregarded as "self-serving." (Docket Entry No. 18 at 5).  The defendants also argue that "[a]t all times after the Plan's effective date, AES directed Plan participants, including Mr. Khan, to access an on-line intranet database to

enroll for benefits and to review the terms of the Standard Plan Description"; that "AES mailed annual Benefit Enrollment Guides to eligible Plan participants for the purpose of providing a summary of available Plan benefits in easy-to-understand language"; and that Khan was not "excluded from AES's Plan notification protocol."  (Docket Entry No. 18 at 7).  The defendants, however, have not submitted evidence to support these contentions.

### C.      Khan's Claim for Benefits under the Plan

The defendants contend that shortly before April 7, 2006, the date Khan's employment with AES ended, Khan was provided with a document entitled "Exit Interview Benefits Information." That document stated that Khan's coverage under the various types of insurance he carried through AES would end on April 9, 2006.  On the document, the date is set off separately and underlined. This statement is consistent with the SPD statements that accidental death insurance coverage under the Plan ended when employment with AES ended. The Exit Interview Benefits Information document Khan received included statements about how to convert the health insurance and life insurance provided to AES employees to individual coverage and provided conversion deadlines. For accidental death and dismemberment insurance under the Plan, however, the Exit Interview Benefits Information document did not provide such information.  The document instead stated: "Effective January 1, 2003, Personal Accident Insurance (AD&D) is insured by the Ruben (sic) Warner Company.  Contact Ruben (sic) Warner company at (800) 421-3005 to speak with Terry Resnick or Collette Marrapody."  (Admin. Rec. 63).

Khan denies that he received the "Exit Interview Benefits Information" document.  Khan also denies that he received any oral instructions at his exit interview about to how to convert coverage under the Plan after his employment ended.  Khan argues that the written and oral

6

statements made to him when his employment ended were insufficient as a matter of law to explain his conversion rights.  Khan also points to the fact that AES deducted from his last paycheck the Policy premium payment through the end of the last month he worked.  This deduction is consistent with the SPD statement that his coverage extended to the last day of that month.  (Admin. Rec. 136).

Khan's wife, Rose Upshaw, died in a car accident on April 20, 2006.  On that date, Khan had not taken steps to convert the dependent coverage under the Plan to an individual policy.  Khan also had not taken steps to convert the dependent life insurance provided to him as an AES employee to an individual policy.  In contrast to the treatment of Khan's claim for accidental death benefits under the Plan, his $20,000 death benefit claim under the dependent life insurance policy was paid promptly.

Khan informed AES and NUFIC of Upshaw's death.  On April 28, 2006, AIG Claims Services, the claims administrator for NUFIC under the Plan, wrote to Khan asking him to provide a certified copy of the death certificate and a notarized claim form.  (Admin. Rec. 208, 219).[1]  Khan provided the requested documentation on July 6, 2006.  (Admin. Rec. 214–218).  On August 4, 2006, AIG Claims Services wrote to Khan stating that they "continue[d] to research this matter to determine whether [Upshaw] was in a Classification of Eligible Persons at the time of the accident."  The letter asked Khan "to advise whether you converted your group policy to an individual policy

---

[1]

Khan appears to have abandoned on summary judgment the allegation in his complaint that the defendants breached their fiduciary duty by failing to inform him in this letter or in other communications after Upshaw's death, that he had 31 days after his employment with AES ended to convert to an individual accidental death and dismemberment policy.  (Docket Entry No. 1 ¶¶ 25, 26).  The conversion provisions in the Plan provide that coverage lapses between the date employment ends and the date the ex-employee converts to an individual policy.  Upshaw's death occurred during this lapse.  Even if the defendants had informed Khan of his conversion right after Upshaw's death, conversion at that point would not have provided coverage for her death.

after your last day worked at [AES.]"  (Admin. Rec. 196–97).  Khan did not respond, but AIG Claims Services independently verified that Khan had not converted the accidental death policy under the Plan to an individual policy after his employment ended and before his wife's accident. (Admin. Rec. 166).  On October 27, 2006, NUFIC informed Khan that it had completed its review and determined that no accidental death benefits were payable.  NUFIC explained that "we must decline payment of this claim as at the time the accident happened, your spouse was no longer an insured person under this Policy.  Coverage for yourself and your family members ended on April 8, 2006, the date you ceased to be an active full-time employee of [AES].  In addition, according to the records of Reuben Warner Associates, you did not convert your group coverage to an individual policy."  NUFIC explained that Khan had 60 days to appeal and set forth the appeal procedure. (Admin. Rec. 162).

On December 19, 2006, an attorney for Khan wrote to AIG Claims Services and NUFIC requesting certain documents, including documents "reflecting payment of premiums made by Khan," such as payroll registers, payroll stubs, and documents showing the refund of Khan's Plan premiums to AIG or to Khan.  (Admin. Rec. 140–41).  On December 21, 2006, Khan filed his formal appeal but asked for a delay pending production of the documents requested.  (Admin. Rec. 121–22). AIG Claims Services responded on January 24, 2007 by attaching a copy of the administrative record and stating that Khan should ask AES for documents reflecting premium payments.  (Admin. Rec 117–19).  Khan did not request these documents from AES.  Instead, he renewed his appeal.

On appeal, Khan argued that because his final paycheck, dated April 7, 2006, deducted $8.00 for a Plan premium payment for the entire pay period, and no premium payment had been refunded,

Khan was entitled to coverage through the beginning of the next pay period, which was April 21, 2006.  Second, Khan argued that AES was estopped to deny coverage by the failure to advise him "of any requirement to convert the referenced policy within . . . 31 days."  Khan argued that the separate dependent life insurance policy had the same coverage and conversion provisions and that he was paid the dependent life insurance benefits.  The dependent life insurance policy benefits were paid during the conversion period although Khan and Upshaw had not yet converted to an individual policy.  Because the time for converting had not expired, it was "presumed" that the dependent would have converted within the deadline.  (Admin. Rec. 94–101).  Khan argued that the accidental death benefits should also be paid on the same basis.

NUFIC's ERISA Appeals Committee denied Khan's appeal on April 25, 2007.  In an April, 27, 2007 letter, AIG Claims Services explained the bases for the denial: Khan had not taken steps to convert his coverage under the Plan to an individual policy before the death occurred, although the time for conversion had not yet expired; his coverage under the Plan, absent conversion, ended on the date his AES job ended; and premiums had not been paid for the previous two weeks of coverage, so "no premium refund was due and none offered."  (Admin. Rec. 42–45).

This appeal followed.

### D.    The Summary Judgment Motions

The defendants have moved for summary judgment on all grounds.  (Docket Entry No. 12). Khan has cross-moved for summary judgment that he is entitled to "appropriate equitable relief" for the defendants' breach of fiduciary duty.  Khan contends that the defendants breached their fiduciary duties by failing to provide him a copy of the SPD during his employment.  (Docket Entry No. 14). Khan did not raise this issue during the review process or in his complaint in this lawsuit.  Instead,

9

this issue was raised for the first time in an affidavit Khan filed in support of his cross-motion for summary judgment.  (Docket Entry No. 14-3).  Khan also contends that the defendants breached their fiduciary duties by failing to provide notice of his conversion rights before his wife's death. Khan seeks equitable relief in the form of the benefits he would have received had he converted to an individual policy effective when his employment ended.  In the alternative, Khan argues that the defendants are estopped from denying him coverage under the Plan.  Khan has also cross-moved for summary judgment on a federal common-law ERISA-estoppel theory, arguing that the defendants' failure to provide an SPD or adequate notice of conversion rights was a material misrepresentation on which he relied in not converting as soon as his employment ended, to his detriment.  (Docket Entry No. 14).

Although Khan responded to the defendants' summary judgment motion and cross-moved for summary judgment, he had previously filed a motion seeking discovery and a continuance under Federal Rule of Civil Procedure 56(f).  Khan sought documents about whether AES ever sent him a copy of the SPD during his employment and whether AES informed him about his conversion rights before Upshaw's death.  Khan also sought discovery as to whether premiums were paid and applied in advance of coverage – and, if so, if he received a refund when his employment ended – or only for coverage already provided.  Khan argues that if premiums were paid in advance of coverage and not refunded, the defendants should be estopped from denying coverage.  (Docket Entry No. 13).

Khan asks in the alternative that this court remand to the Plan Administrator for further consideration as to:  the effect of AES's failure to provide him with the SPD or with information about his conversion rights; the effect of the "inconsistent interpretation" of the conversion requirements between the life insurance and accidental death and dismemberment policies; and the

10

effect of inconsistent SPD provisions about when coverage ends and therefore when it is necessary to convert to an individual policy.

## II.    The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).   "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F .3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied

by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

Federal Rule of Civil Procedure 56(f) authorizes a district court to order a continuance to permit additional discovery if the nonmovant shows that she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (citing *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992)). In requesting additional time for discovery under Rule 56(f), the nonmoving party must show why additional discovery is necessary. *Id.* (citing *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001)). The nonmoving party may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Id.* (citing *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n.5 (5th Cir. 2002)). If no discovery has yet taken place, "the party making the Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid." *Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003). The Fifth Circuit has held it to be an abuse of discretion not to grant a Rule 56(f) motion if the discovery opportunity has clearly been inadequate. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 355 (5th Cir. 1989).

## III.  Analysis

### A.    The Breach of Fiduciary Duty Claim

Khan contends that the defendants breached their fiduciary duty by failing to provide him

a copy of the SPD, in violation of 29 U.S.C. § 1022(a),[2] and by failing to give him adequate written or oral notice of his conversion rights when his employment with AES ended.  Khan contends that he can recover under 29 U.S.C. § 1132(a)(3) or § 1132(a)(1)(B).  The defendants dispute Khan's contention that the SPD was not provided and that the notice of conversion rights was inadequate. The defendants also contend that even if they breached their fiduciary obligations, Khan cannot pursue the breach of fiduciary duty claim because he is also pursuing a claim for benefits under the Plan.  The defendants also argue that the remedies that Khan seeks—all of which essentially seek payment of Plan benefits—are not "appropriate equitable relief" for the alleged breach.

1.    *"Appropriate Equitable Relief" under § 1132(a)(3)*

Khan has moved for summary judgment that he is entitled to benefits under 29 U.S.C. § 1132(a)(3) as equitable relief for the defendants' breach of fiduciary duty.  Section 1132(a)(3) permits a plan participant or beneficiary to bring a civil action "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Khan seeks "equitable relief" in the form of the benefits to which he would have been entitled had he converted to an individual policy before Upshaw's accident.  Khan contends in the alternative that the defendants should be estopped from denying coverage, or that he should be reinstated as an Insured Person under the Plan to receive benefits for Upshaw's death.

---

[2]

Section 1022(a) provides that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries."  The SPD is required to contain an extensive list of information, including "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, by ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).  The SPD "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a).

Khan's breach of fiduciary duty claim fails because he is also pursuing a claim for plan benefits under § 1132(a)(1)(B).  "[A]n ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under [§ 1132]."  *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 510–16 (1996)).  If "an insured has adequate redress for denied benefits through [the] right to bring suit under section 1132(a)(1), and if [the insured] is seeking the same relief that is available for a claim for benefits under section 1132(a)(1), [the insured] has no claim for breach of fiduciary duty under section 1132(a)(3), even if her claim under section 1132(a)(1) is subsequently lost on the merits."  *Adams v. Prudential Ins. Co. of Am.*, No. 05-2041, 2005 WL 2669550, at *1 (S.D. Tex. Oct. 19, 2005) (observing that courts interpreting *Varity* have "consistently" reached the same result).  In *Varity*, the Supreme Court emphasized that § 1132(a)(3) is a "catchall" provision that provides relief for injuries that are not otherwise adequately addressed under ERISA.  516 U.S. at 515. Following this guidance, the Fifth Circuit has concluded that if a plaintiff can pursue plan benefits under § 1132(a)(1), the plaintiff has an adequate remedy and may not also pursue a claim under § 1132(a)(3).  *See Rhorer*, 181 F.3d at 639 (upholding dismissal of the plaintiff's claim that the defendants breached their fiduciary duties by inadequate disclosures in the SPD because in addition to that claim, the plaintiff was "seeking to recover plan benefits under § 1132(a)(1)(B)" and "the claim to recover plan benefits [wa]s the predominate cause of action in th[e] suit"); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

Khan does not dispute that he has sued the Plan directly for recovery of benefits wrongfully denied, or that his "claim to recover plan benefits is the predominate cause of action in this suit."

14

*Rhorer*, 181 F.3d at 639.  Khan has adequate available relief for the alleged improper denial of benefits through his right to sue "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  Khan may not also sue for breach of fiduciary duty under § 1132(a)(3).

Khan's § 1132(a)(3) claim fails for the additional reason that this subsection does not permit the type of relief that Khan seeks.  In the Fifth Circuit, "appropriate equitable relief" under § 1132(a)(3) does not include recovery in the form of payment of benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty.  *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 & n.7 (5th Cir. 2007), *cert. denied*, --- U.S. ---, 128 S. Ct 2995 (2008).  In *Amschwand*, the defendant employer switched insurance companies while the plaintiff employee was on medical leave for cancer.  The new policy stated that coverage would not begin until the employee returned to work for one full day.  As the employee's condition deteriorated, he repeatedly contacted his employer to confirm that he was covered under the policy.  Each time, he was assured that he was fully covered.  Despite the employee's repeated requests for documentation of coverage terms, he never received a copy of the SPD.  The parties stipulated that the employee was never informed that he would be required to return to work for at least one full day.  The employee died without returning to work for one full day.  His wife filed a claim under the policy, only to be informed that she was ineligible for benefits because her husband had not returned to work for one full day.  She sued the employer and the plan administrator individually and on her husband's behalf under § 1132(a)(3), seeking equitable relief in the form of "monetary losses caused by the [defendant's] breach of fiduciary duty."  The Fifth Circuit upheld the district court's grant of summary judgment to the defendants, reasoning:

> Obtaining the lost policy proceeds, as Amschwand requests, is simply a form of make-whole damages.  This demand is not equitable in derivation, but is akin to the legal remedies of extracontractual or

> contractual damages.  In contrast to the make-whole damages sought here, equitable restitution was designed to restore the trust res damaged by a trustee's breach of duty; it did not aim to compensate a beneficiary for expected gains that would have accrued absent a fiduciary's breach.

*Id.* at 348.  The court concluded that if the defendants breached their fiduciary duty to the plaintiff, the "appropriate equitable remedy" would be limited to the "disgorgement of [the defendant's] ill-gotten profits, *i.e.*, refund of the policy premiums." *Id.*

The *Amschwand* court cited with approval *Callery v. United States Life Ins. Co.*, 392 F.3d 401, 405–06 (10th Cir. 2004).  In that case, the plaintiff sought "equitable relief providing for payment of the insurance on the life of" her ex-husband.  The policy and SPD stated that an insured's right to receive spousal life insurance benefits terminated in the event of divorce, but the plaintiff had never received a copy of the policy or the SPD and had continued paying life insurance premiums for coverage for her ex-husband.   The appellate court upheld the dismissal of the plaintiff's breach of fiduciary duty claim, concluding that the relief sought—the recovery of benefits under the policy—was "compensatory and not typically available in equity." *Id.* at 405-06.

*Amschwand* and *Callery* preclude equitable relief in the form of benefits that would have been due under an insurance policy as a remedy for breach of fiduciary duty.  These cases also preclude the two other bases for relief under § 1132(a)(3) that Khan asserts—estopping the defendants from denying coverage or reinstating Khan to the Plan.  These remedies are "essentially indistinguishable from a demand for payment." *Amschwand*, 505 F.3d at 348 n.7.  The *Amschwand* court rejected the plaintiff's alternative characterization of her claim under § 1132(a)(3) as seeking "injunctive relief that would preclude [the defendants'] withholding payment" of benefits under the Plan, observing that "attempts to recharacterize a desired [§ 1132(a)(3)] remedy as a purely equitable form of relief, like an injunction, have consistently been rejected."  505 F.3d at 348 n.7; *see also*

*Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210–11 (2002) (concluding that the plaintiff was not entitled to equitable relief under § 1132(a)(3) because "[a]n injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity"); *Mertens v. Hewitt Assocs.*, 508 U.S. at 255 (concluding that the plaintiffs were not entitled to relief under § 1132(a)(3) because "[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties"). In *Callery*, the court similarly rejected the plaintiff's request "to enjoin the defendants from not paying her the life insurance benefits" or for "an order estopping defendants from denying" the claim. The court noted that the plaintiff's claim, however worded, was essentially one for "compensatory *damages*"—"'the classic form of *legal* relief.'" 392 F.3d at 405 (quoting *Great-West,* 534 U.S. at 211 n.1 (emphasis original)). Under *Amschwand* and *Callery*, when, as here, the essence of the estoppel relief is to compel payment under a policy, the estoppel claim is not cognizable under § 1132(a)(3).[3] Fifth Circuit case law similarly "makes it clear that . . . 'reinstatement' of benefits . . . does not qualify as equitable relief under" § 1132(a)(3) when, as here, the plaintiff "casts her prayer for relief as equitable, [but] in substance she is seeking damages in the form of life insurance proceeds." *Hobbs v. Baker Hughes*, 294 F. Appx. 156, 159 (5th Cir.

---

[3]      Khan 's citation to *Bourgeois v. Pension Plan for Employees of Santa Fe International Corps.*, 215 F.3d 475, 481–82 (5th Cir. 1997), does not support a different result. In *Bourgeois*, the Fifth Circuit concluded that because the defendants had not provided the plaintiff with an SPD and had "engaged [him] in negotiations regarding his benefits without ever referring him to the proper channels before issuing what appeared to be a final denial," a "limited estoppel remedy" was appropriate. The Fifth Circuit remanded to the pension committee for a determination of benefits under the policy with an instruction that the defendants were estopped from arguing that the beneficiary's claims were time-barred. The relief granted in *Bourgeois* was narrowly limited to preventing the defendants from asserting a discrete affirmative defense. The only reason the defense would have been available was the delay resulting from defendants' conduct. The relief was not "essentially indistinguishable from a demand for payment." *Amschwand*, 505 F.3d at 348 n.7.

2008) (unpublished) (citing *Amschwand*, 505 F.3d at 348)).[4]

### 2.    Relief under § 1132(a)(1)(B)

Khan contends that "a claim for breach of fiduciary duty can be asserted under subsection 1132(a)(1)(B) as well as subsection 1132(a)(3)."    (Docket Entry No. 14 at 15).   Section 1132(a)(1)(B) provides, in relevant part, that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan [or] to enforce his rights under the terms of the plan."   The Fifth Circuit has squarely held that claims for "entitle[ment] to benefits not because they are due . . . under the terms of the [policy] but rather because [the defendants] engaged in 'inequitable conduct' and breached their fiduciary duties" are "simply not cognizable under [§ 1132(a)(1)(B)]."   *Chacko v. Sabre, Inc.*, 473 F.3d 604, 609 (5th Cir. 2006).[5]

The defendants' motion for summary judgment on Khan's breach of fiduciary duty claim is

---

[4]

      Khan cites *Varity Corp. v. Howe*, 516 U.S. 489, 494–94, 505–06 (1996) to support his argument that reinstatement as an insured is an available remedy for breach of fiduciary duty. But the essence of relief sought in *Varity* was not recovery of plan benefits that had been withheld but reinstatement as a plan insured going forward.   In *Varity*, the defendant had deliberately tricked beneficiaries into transferring their jobs to an insolvent subsidiary and misled the beneficiaries into believing that a new set of benefits through the subsidiary would be secure.   The subsidiary entered receivership and the plaintiffs lost their benefits.   The Court upheld reinstatement into the employees' original plan as a remedy for the defendants' breach of fiduciary duty.

[5]

      Khan cites *Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339, 349 & n.5, 351–52 (5th Cir. 2003).   In *Musmeci*, the plaintiffs, retired employees of a grocery chain, brought a class-action suit to recover benefits under a program that promised retirees monthly grocery vouchers for use in the chain's stores.   The defendants terminated the voucher program when they sold the grocery chain.   The parties did not dispute that the program entitled the retirees to grocery vouchers.   The defendants argued that relief under § 1332(a)(1)(B) should be limited to the "recover[y] of benefits . . . under the terms of [the] plan"—the now-worthless grocery vouchers.   The court rejected this argument, holding that the program entitled the plaintiffs to compensation and that "monetary relief in the amount of the benefit denied is the appropriate remedy." *Id.* at 349.   The court also held that the defendants had breached their fiduciary duties and were therefore personally liable for paying this monetary remedy under 29 U.S.C. § 1109.   But it was not the breach of fiduciary duty that established the entitlement to benefits.   The plan terms were the basis of the benefit award. *Musmeci* does not support Khan's argument that he may recover the Plan benefits as a remedy for a breach of fiduciary duty from the failure to provide information.

granted.  Khan's cross-motion for summary judgment on the breach of fiduciary claim is denied.

### B.        The ERISA-Estoppel Claim

Khan also contends that the defendants' alleged breach of fiduciary duty is actionable on an ERISA-estoppel theory.  The Fifth Circuit recently recognized an ERISA-estoppel claim under federal common law.[6]  To establish an ERISA-estoppel claim, a plaintiff must prove: (1) a material misrepresentation; (2) reasonable and detrimental reliance on that representation; and (3) extraordinary circumstances. *Nichols v. Alcatel*, 532 F.3d 364, 374 (5th Cir. 2008); *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).  Khan contends that the "defendants had a fiduciary duty to provide or make available information reasonably necessary for Khan to obtain his benefits under the Plan," and that "their failure to disclose such information was a material misrepresentation" on which he reasonably and detrimentally relied.  (Docket Entry No. 14 at 16–17).

Khan cites no case holding that omitting certain disclosures, even required disclosures, particularly without an accompanying allegation that the omission was made with intent to deceive, can be a "material misrepresentation" giving rise to an ERISA-estoppel claim.  *Cf. Burnstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Foundation*, 334 F.3d 365, 383 (3d Cir. 2003) ("[W]e have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as . . . an omission in the disclosure

---

[6]

The contours of the newly recognized ERISA-estoppel remedy are "murky," but the doctrine does not appear to be tied to the equitable relief provisions of § 1132(a)(3).  *See Hughes v. Legion Ins. Co.*, No. H-03-0993, 2007 WL 78951, at **6–7 (S.D. Tex. Mar. 12, 2007) ("In this circuit, ERISA -estoppel has been applied either in the context of a claim for benefits under [§ 1132(a)(1)(B) or as a separate equitable theory of relief under [§ 1132(a)(3)].");  *see also Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005) (in the context of a claim under § 1132(a)(1)(B), recognizing ERISA-estoppel as an available, federal common-law remedy).

documents.").

And Khan does not argue that this case presents "extraordinary circumstances." *See Nichols*, 532 F.3d at 374. The case law shows that such an argument would not succeed. In *High v. E-Systems Inc.*, 459 F.3d 573, 580 n.3 (5th Cir. 2006), the Fifth Circuit held that "extraordinary circumstances d[id] not exist" when for six years the defendants mistakenly issued the plaintiff beneficiary a $1,200 monthly disability check rather than the $50 per month to which he was entitled under the policy. The court cited with approval the Third Circuit's interpretation that "extraordinary circumstances" "generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Burstein*, 334 F.3d at 383 (internal citations and quotations omitted); *see also Callery*, 392 F.2d at 407–08 (stating that if ERISA-estoppel was a viable claim in the Tenth Circuit, it would be limited to "egregious cases" in which there is evidence of "lies, fraud or an intent to deceive"). The *E-Systems* court also cited with approval the Third Circuit's opinion in *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991). In *Gridley*, the plaintiff, while continually and totally disabled in the hospital, increased his life insurance coverage under a plan that specifically required the employee to return to active, full-time status before the increase would take effect. The plaintiff was never provided a copy of the SPD, although the plaintiff was given an abbreviated insurance "certificate," which contained the active work requirement, and a brochure explaining the benefits, that did not. The court found that extraordinary circumstances did not exist when the insurer refused to pay benefits in the increased amount, despite the fact that the employer had deducted additional amounts from the plaintiff's salary to cover the increased premium. *Id.* at 1319-20, 1320 n.10.

The record in the present case does not contain allegations or evidence of the type of "extraordinary circumstances" that could support an ERISA-estoppel claim. The defendants' motion

for summary judgment on Khan's ERISA-estoppel claim is granted.  Khan's cross-motion for summary judgment on the ERISA-estoppel claim is denied.

### C.     The Motion for Discovery and a Continuance

Khan seeks additional discovery and a continuance under Rule 56(f) to confirm that the defendants never provided him a copy of the SPD or written notice of conversion rights and procedures.  Because the claims for which these items would be relevant—Khan's claims for breach of fiduciary duty or estoppel—fail as a matter of law, Khan's request as to these documents is denied as moot.

Khan also seeks discovery and a continuance to determine whether Plan premiums were paid in "advance of coverage" or for coverage already provided under the Plan.  The requested discovery includes "[d]ocumentation reflecting the date that the insurance coverage began, and the dates the insurance premiums were paid for that coverage" and "[d]ocumentation or sworn testimony that Defendants did not refund any insurance premiums to Plaintiff."  (Docket Entry No. 13 at 6–7). Khan argues that if this discovery shows that premiums were paid in advance of coverage and no premiums were refunded, the defendants should be estopped from denying coverage.  The defendants counter that this discovery request should be denied as moot, because even if premiums were paid in advance of coverage, the only available remedy would be the refund of any premium payments made past the date coverage terminated, not, as Khan contends, recovery of full benefits under the Plan.

Khan has not cited authority to support the argument that the payment of premiums on a policy, the terms of which do not provide coverage, can otherwise create coverage.  In numerous cases, courts have upheld the denial of benefits under a policy despite the defendants' acceptance of premiums for that policy.  In *Callery*, for example, the plan administrator failed to provide the

plaintiff with a copy of the SPD, which excluded life insurance coverage for divorced spouses. Despite the exclusion, the plaintiff's employer continued to deduct premiums from her paycheck for her ex-husband's coverage.  The Tenth Circuit rejected the plaintiff's argument that this could provide a basis for coverage, concluding that the proper remedy would be "the premiums paid by Ms. Callery to [her employer] . . . rather than the face amount of the policy."  392 F.3d at 406. Similarly, in *Amschwand*, the Fifth Circuit upheld denial of life insurance coverage, despite the fact that the plaintiff's employer had deducted numerous premium payments for this coverage, because the plaintiff had never returned to active work, as was required to activate coverage under the policy. 505 F.3d at 344.  The Third Circuit's opinion in *Gridley*, 924 F.2d at 1319, reached the same conclusion on substantially similar facts.  In *McKenzie v. Advance Stores Co.*, 488 F. Supp. 2d 658, 671 (S.D. Ohio 2007), the court held that the plaintiff could not seek coverage under a dependent life policy for which he otherwise did not qualify based on the fact that his employer had deducted $3.68 in premiums from his paycheck. The court concluded that the refund of the $3.68 mistakenly withheld from the plaintiff's paycheck was the only available remedy.  Even if premiums under the Plan were paid in advance of coverage, this would not provide a basis for granting Khan benefits under the Plan if the Plan terms otherwise precluded coverage.  The appropriate relief, if any, would be the refund of the $8.00 premium payment, but Khan has not requested such relief.  The motion for discovery as to whether premiums were paid in advance of coverage is denied as moot.

### D.    The Motion to Remand

Khan alternatively asks this court for an order remanding his benefits claim to NUFIC for further consideration.  Khan offers several grounds for remand.  Two are unpersuasive.  The first is that remand would allow NUFIC to consider Khan's contention that payroll and other records that might show whether premiums were paid in advance of coverage.  (Docket Entry No. 14 at 14, 19).

But even if evidence showed that premiums were paid in advance of coverage, this would not entitle Khan to coverage under the Plan.  Remand is not appropriate on this basis.

The second basis Khan urges is that remand would allow NUFIC to consider the different approaches taken to the dependent life insurance policy (under which Khan recovered benefits despite not converting), and the Plan, under which Khan was denied accidental death and dismemberment benefits.  The defendants clarified at the summary judgment hearing that the dependent life insurance AES made available to its employees was provided by another carrier and was not part of the Plan.  The dependent life insurance policy had its own plan documents and plan administration.  The interpretation of a different plan by a different plan administrator is not a sufficient basis for remand.

Khan's third basis for remand has merit.  He argues that this court should remand to allow NUFIC to consider the effect of the conflicting SPD provisions about when coverage terminates. Under the SPD, an Insured Dependent's coverage ends "the date the Insured's coverage ends." (Admin. Rec. 273, 277).  One part of the SPD, consistent with the Policy, provides that an Insured's coverage ends "the date [the Insured] cease[s] to be an eligible employee of [AES]."  (Admin. Rec. 273).  Another part of the SPD, however, states that an Insured's coverage ends "the last day of the month in which the Insured ceases to be eligible for coverage under the Policy."  (Admin. Rec. 277). The defendants admitted at the summary judgment hearing that NUFIC did not consider the ambiguity in the SPD because it relied exclusively on the Policy in reaching its coverage determination.  The defendants argue that NUFIC was not required to consider the ambiguity in the SPD because the SPD provides that "[i]n the case of any conflict between the descriptions contained in this SPD and the [Policy], the [Policy] will always govern."  (Admin. Rec. 290).  But the Fifth Circuit case law is clear that giving effect to such a disclaimer would "eviscerate" the statutory

23

requirement that a summary plan description be provided because "if a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir. 1991). Under Fifth Circuit case law, the language in the SPD providing that the full policy governs if there is a discrepancy between the SPD and the policy "fails as a matter of law." *Id.* Instead, when the policy and SPD conflict, "the terms of the SPD control and are binding." *Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453, 457 (5th Cir. 2007); *see also Hansen*, 940 F.2d at 982 ("[T]he summary plan description is binding, and [ ] if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern."). An insured need not have relied on the SPD for the terms in that document to control over inconsistent policy terms. *Rhorer*, 181 F.3d at 644 n.12 ("This Court has never held that an ERISA claimant must prove reliance on a summary plan description in order to prevail on a claim to recover benefits."); *see also Murphy Oil*, 497 F.3d 459 (finding that the contractual nature of the SPD cuts against a reliance requirement). The disclaimer in the SPD did not relieve NUFIC of its obligation to consider the effect of the SPD's inconsistent provisions.

In this case, the issue is complicated by the fact that the SPD is not merely inconsistent with the policy; the SPD itself contains inconsistent provisions. One provision states that coverage ends when employment ends; the other provision states that coverage extends until the last day of the month employment ends. The Plan Administrator did not consider the internal inconsistency between the two statements within the SPD and the inconsistency between one of those statements in the SPD and the policy.

Remand is appropriate when, as here "the administrator never had occasion to interpret" a provision upon which coverage may turn. *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 398 (5th

Cir. 1998).  ERISA requires a district court to review determinations made by employee benefits plans, including employee disability plans.  *See* 29 U.S.C. § 1132(a)(1)(B); *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004).  A district court's role is to review the plan administrator's determinations as to coverage; a district court should not interpret a plan's provisions in the first instance.  *Schadler*, 147 F.3d at 398 (remanding to the plan administrator to determine whether a policy exclusion that the plan administrator had not considered provided an alternate basis for denying coverage after the plan administrator's basis for denying coverage was overruled on review); *see also Roig v. Ltd. Long-Term Disability Program*, 275 F.3d 45, 2001 WL 1267475, at *4 (5th Cir. Oct. 9, 2001) (unpublished) (vacating the district court's *de novo* interpretation of a policy exclusion and remanding to the plan administrator, holding  that "[o]nce the district court reached the long-term benefits issue, one that had not been passed upon by the plan administrator, *Schadler* required it to remand the case to the plan administrator").

Remand is also appropriate when, as here, the Plan Administrator's failure to consider a critical benefits issue results from a legally incorrect Plan interpretation.[7]  Under clear Fifth Circuit law, NUFIC could not reconcile inconsistencies between SPD provisions and Policy provisions by relying on the disclaimer language stating that, in the event of a conflict, the Policy controlled.  Because NUFIC gave controlling effect to the Policy language when it was inconsistent with an SPD term critical to coverage, in reliance on the disclaimer, it relied on a legally incorrect Plan

---

[7]

A plan administrator's interpretation of the terms of an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  *See Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554, 558–59 (5th Cir. 1990).  As Khan points out, and the defendants have not disputed, the Plan does not contain any language granting NUFIC discretion.  (Docket Entry No. 14 at 12).  *De novo* review is the appropriate standard of review for NUFIC's plan interpretation, but even under an abuse of discretion standard, NUFIC's Plan interpretation is legally incorrect.

interpretation.  *See Rhorer*, 181 F.3d at 639 (remanding to the district court after conducting an abuse-of-discretion review of the plan administrator's interpretation and concluding that the administrator's interpretation had been "legally incorrect" because it failed to construe the SPD, which contained contradictory provisions about the existence of an active-work requirement, against the drafter).

The facts of *Collinsworth v. AIG Life Ins. Co.*, 404 F. Supp. 2d 911, 916 (N.D. Tex. 2005), are similar.  In *Collinsworth*, as here, neither the policy nor the SPD contained language that conferred discretion on the plan administrator.  The court reviewed the plan administrator's interpretation *de novo* and concluded that ambiguities in the SPD were properly construed against the drafter and did not support the plan administrator's interpretation.  The court remanded to the plan administrator, reasoning that "[b]ecause Defendant's factual analysis was based on an erroneous interpretation of the benefit plan, additional factual determinations need to be made to determine if Plaintiff qualifies for benefits."  *Id.* at 924; *see also Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 456 (9th Cir. 1996) ("[W]hen, as here, the administrator construes a plan provision erroneously, the court should not decide itself whether benefits should be awarded but rather should remand to the administrator for it to make that decision under the plan, properly construed.").

The defendants argued at the summary judgment hearing that remand is inappropriate in this case because Khan did not raise the issue of ambiguity or inconsistency in the SPD during the administrative review.  Under ERISA, a plaintiff must exhaust administrative remedies before suing over benefits that were allegedly wrongfully denied.  *See Bourgeois*, 215 F.3d at 479; *Hager v. NationsBank N.A.*, 167 F.3d 245, 248 n.3 (5th Cir. 1999).  But "a claimant need not exhaust issues or theories."  *Wasson v. Maritime Assoc. I.L.A. Pension Fund*, No. H-05-4250, 2007 WL 1850861,

at *9 (S.D. Tex. June 26, 2007) (citing *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d

Cir. 1984)); *see also Jackson v. Sterling Bancshares Inc.*, No. Civ. A. H-03-1374, 2005 WL 2291191,

at *2 (S.D. Tex. Sept. 16, 2005) (remanding to plan administrator because the plaintiff's claim was

based on "evidence and argument that she did not present to the administrator—namely, evidence

that the SPD does not include the pre-existing condition exclusion and argument that the exclusion

therefore does not apply").  Moreover, the SPD was part of the administrative record that NUFIC

reviewed and considered.  The fact that the SPD contained statements about when coverage ended

that were internally inconsistent and inconsistent with the policy is not a new issue.

Khan's claim is remanded to NUFIC for further evaluation of Khan's claim for benefits,

including the SPD provision stating that coverage extends to "the last day of the month in which the

Insured ceases to be eligible for coverage under the Policy,"  and recognizing that under the Fifth

Circuit case law, when the terms of a policy and a SPD conflict, "the terms of the SPD control and

are binding," *Washington v. Murphy Oil USA, Inc.*, 497 F.3d at 457, and the ambiguity created by

conflicting provisions in an SPD and between an SPD and an insurance policy is to be resolved

against the drafter, *Rhorer*, 181 F.3d at 640–41.

### E.      The Declaratory Judgment Claim

Khan's claim for declaratory judgment as to entitlement to benefits is duplicative of his claim

for benefits under § 1132(a)(1)(B).  *See Baker v. Hartford Life & Acc. Ins. Co.*, No. 08-cv-153, 2008

WL 2378041, at *2 (N.D. Tex. June 9, 2008) (dismissing plaintiff's declaratory judgment claim in

ERISA benefits action).   The defendants' motion for summary judgment dismissing Khan's

declaratory judgment claim is granted.

## IV.    Conclusion

The defendants' motion for summary judgment is granted and Khan's cross-motion for

summary judgment is denied as to the claims for breach of fiduciary duty and estoppel and for declaratory judgment.  Khan's requests for discovery and a continuance are denied as moot.  On the ERISA claim, the parties' cross-motions for summary judgment are denied.

The case is remanded to the Plan Administrator, with the instruction that the claim be determined within 120 days.  This case will be administratively closed pending the claim determination.  It may be reinstated by a motion made by either party within 14 days after the befits determination is issued.

SIGNED on September 8, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

28